**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL. ) | |
| PRETERM INFANT NUTRITION PRODUCTS ) | MDL No. 3026 |
| LIABILITY LITIGATION ) | |
| _____ ) | Master Docket No. 22 C 71 |
| This Document Relates to: ) | |
| ) | |
| Drayton v. Abbott Laboratories, et al ) | Nos. 24 C 11761 |
| Taylor v. Abbott Laboratories, et al ) | 24 C 11764 |
| Wieger v. Abbott Laboratories, et al ) | 24 C 11763 |
| Abdullah v. Abbott Laboratories, et al ) | 24 C 11759 |
| Stills v. Abbott Laboratories, et al ) | 24 C 11765 |
| Carter v. Abbott Laboratories, et al ) | 24 C 11760 |

**MEMORANDUM OPINION AND ORDER**

Before the court are motions to remand six cases that were simultaneously removed from Pennsylvania state court. The claims involved are among hundreds against Defendants Mead Johnson & Company LLC, Mead Johnson Nutrition Company (collectively "Mead Johnson"), and Abbott Laboratories ("Abbott"), in which Plaintiffs have alleged that infant formula products manufactured by Defendants caused necrotizing enterocolitis (NEC) in pre-term infants. This is not Defendants' first effort to remove these cases to federal court. In two prior rulings,[1] this court ordered remand because these Plaintiffs had named, as defendants, the Pennsylvania hospital and hospital system ("hospital defendants") where their infant children were fed with the formula products. The hospital defendants were not diverse from all the Plaintiffs (some, not all, were Pennsylvania citizens) and, moreover, were citizens of the forum-state, so their presence in the case barred removal. Defendant Abbott argued that the hospital defendants were fraudulently joined, but the court rejected the argument. Having now secured dismissals of the forum-defendants in state court, Abbott again seeks a federal forum. For the reasons explained below,

---

[1] *In re Abbott Lab'ys*, No. 22 C 71, 2022 WL 3586150 (N.D. Ill. Aug. 22, 2022) (hereinafter "*Abbott I*") and *In re Abbott Lab'ys*,. No. 22 C 71, 2022 WL 7501283 (N.D. Ill. Oct. 12, 2022) (hereinafter "*Abbott II*").

the court denies Plaintiffs' motions for remand, but certifies its order for interlocutory appeal under 28 U.S.C. § 1292(b).

## BACKGROUND

Plaintiffs Shondera Drayton, Christina Taylor, Gina Wieger, Terraine Abdullah, Alice Stills, and Holli Carter (all represented by the same attorney) commenced their lawsuits against Defendants in Pennsylvania state court on March 24, 2022. (*Drayton* Notice of Removal [1] ¶¶ 1, 7; *Taylor* Notice of Removal [1] ¶¶ 1, 7; *Wieger* Notice of Removal [1] ¶¶ 1, 7; *Abdullah* Notice of Removal [1] ¶¶ 1, 7; *Stills* Notice of Removal [1] ¶¶ 1, 7; *Carter* Notice of Removal [1] ¶¶ 1, 7.) Each of the six Plaintiffs initially brought claims against Mead Johnson, Abbott, and the hospital defendants. *See Abbott I* at *2 (discussing the same claims). Abbott then removed the cases, along with 23 similar claims[2] brought in Pennsylvania state court, to federal court under 28 U.S.C. § 1332, asserting that Abbott is diverse from the plaintiffs and that the amount in controversy is satisfied. *See id.* at *1. Plaintiffs moved for remand, noting the presence of the in-state hospital defendants—who were not diverse from many plaintiffs with Pennsylvania citizenship, and whose presence triggered the forum-defendant rule that bars removal on the basis of diversity from a defendant's home state. *Id*. Abbott contended that the hospital defendants' citizenship should be disregarded for the purposes of ascertaining jurisdiction because they were fraudulently joined. *Id*.

This court considered and rejected Abbott's fraudulent joinder arguments in two rulings. First, in *Abbott I*, this court rejected Abbott's contention that Plaintiff's theories of liability against the hospital defendants in negligence had "no reasonable possibility of success." *Abbott I* at *8. In so finding, the court noted allegations that the hospitals had knowledge of the "increased risk of NEC and death" posed by the infant formulas and took no steps to mitigate the danger or warn

---

[2] The court is not aware of the status of these additional cases as they have not, for now, been removed again to this court.

2

the Plaintiffs. *Id*. In *Abbott II*, this court then rejected Abbott's argument that Plaintiffs' claims against the hospital defendants were procedurally barred for failure to obtain certificates of merit under Pennsylvania law. *Abbott II* at *1. Though Plaintiffs had not obtained certificates of merit before filing actions against the hospitals (as required by Pennsylvania Rule of Civil Procedure 1042.3), the deadline for obtaining a certificate of merit had not passed at the time of removal; the court concluded, therefore, that failure to obtain certificates of merit did not provide a basis for finding fraudulent joinder. *Id.* at *2–3. The court remanded the cases to Pennsylvania state court. *Id*. at *4.

On October 21, 2024, the Pennsylvania Court of Common Pleas sustained Defendants' preliminary objections[3] against Plaintiffs' claims against the hospital defendants, dismissing each Plaintiff's claims against the hospital defendants with prejudice. (*See Abdullah* Notice of Removal, Ex. A-80 [1-5] at 632.)[4] Judge Linda S. Carpenter wrote:

> This Court has reviewed the Complaint and taken as true the scant factual averments plead therein and agrees with the defendant hospital system that the claims plead by plaintiff against the hospital based on the facts alleged, are not recognized under Pennsylvania law and do not set forth a prima facie case under any recognized claim against the hospital system.

*Id*. In a phone call on October 30, 2024, the parties discussed Judge Carpenter's dismissal of the claims against the hospitals. (*Abdullah* Richeson Decl. [14-6] ¶¶ 9–10.) During that call, Abbott's counsel directly asked Plaintiffs' counsel if they intended to appeal the dismissal, and Plaintiffs responded "No." (*Id*. ¶ 10.) The next day, October 31, 2024, Abbott again removed all

---

[3] Under Pennsylvania Rules of Civil Procedures, "preliminary objections," not motions to dismiss, are the mechanism to seek dismissal of a complaint for failure to state a claim. *See* PA. R. CIV. P. 1028(4).

[4] The Pennsylvania court issued separate orders for each of the cases discussed here, but the orders (attached to Abbott's notices of removal) are identical and all reference the rationale set forth in the *Abdullah* ruling.

3

six cases to federal court, noting that there was now full diversity between the parties,[5] sufficient amounts in controversy, and no remaining forum-defendants in the case. (*See Abdullah* Notice of Removal ¶¶ 9, 11.) Mead Johnson consented to the removal. (*Id*. ¶ 7.)

Then, on November 8, 2024, the Pennsylvania court appears to have amended its order dismissing the claims: the November 8 order granted Plaintiffs leave to amend their respective complaints regarding their corporate liability claims against the hospital defendants within 20 days. (*See Abdullah* Mot. to Remand, Ex. 8 [10-8] at 1–2.)[6] Plaintiffs moved to remand promptly thereafter, on November 21, 2024.

## **DISCUSSION**

Under 28 U.S.C. § 1446(b)(3), a case that was not initially removable may be removed within 30 days of "an amended pleading, order, or other paper" that renders the case removable. In this case, though the presence of the in-state defendants made the case non-removable at the initial pleading stage, the Pennsylvania court's dismissal of the hospital defendants removed that hurdle and triggered the possibility of removal.

Removal pursuant to § 1446(b)(3) is cabined by two limitations, one statutory and one doctrinal. First, § 1446(b)(3) is limited by § 1446(c)(1)—which states that "a case may not be

---

[5] As of today, Plaintiffs are citizens of Pennsylvania (Abdullah, Drayton, and Stills), New Jersey (Carter and Wieger), and Delaware (Taylor). (*Drayton* Notice of Removal ¶ 12; *Taylor* Notice of Removal ¶ 12; *Wieger* Notice of Removal ¶ 12; *Abdullah* Notice of Removal ¶ 12; *Stills* Notice of Removal ¶ 12; *Carter* Notice of Removal ¶ 12.) Mead Johnson is a citizen of Delaware and Indiana; Abbott is a citizen of Illinois. (*See Abdullah* Notice of Removal. ¶¶ 15–17.)
Plaintiff Christina Taylor's claim stands somewhat distinct from the other claims at issue in this case because, as a citizen of Delaware, she is not diverse from Defendant Mead Johnson. As such, Abbott contends in Taylor's case that Mead Johnson was also fraudulently joined to her claims. (*See Taylor* Notice of Removal ¶ 18.) The court will direct further briefing on this case.

[6] Removal to federal court ordinarily divests the state court of jurisdiction over the case. 28 U.S.C. § 1446(d). In arguing this motion, the parties dispute whether Judge Carpenter maintained jurisdiction over Plaintiffs' claims against the hospital defendants when she amended her order on November 8, though it does not appear that Defendants challenged the validity of the order in state court. (*See generally* Hr'g Tr. at 58:14-59:23.) The validity of Judge Carpenter's post-removal order is not, however, critical to this court's ruling on the motion to remand.

removed under subsection (b)(3) on the basis of section 1332 more than 1 year after the commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 42 U.S.C. § 1446(c)(1). Here, more than two years passed from the time that Plaintiffs filed claims on March 24, 2022, until October 31, 2024, when Abbott filed the instant notices of removal—a span that would appear to bar invocation of § 1446(b)(3) as a basis for removal. But Abbott contends that § 1446(c)(1) should not apply as a bar in these cases because Plaintiffs acted in bad faith by fraudulently joining the hospital defendants in the first instance. (See *Abdullah* Notice of Removal ¶ 9.) Indeed, a showing that a plaintiff fraudulently joined a non-diverse or forum defendant to defeat removal is one method of showing bad faith under § 1446(c)(1). *See generally McVey v. Anaplan, Inc.*, No. 19 C 07770, 2020 WL 5253853, at *3–4 (N.D. Ill. Sept. 3, 2020) (discussing how fraudulent joinder may be sufficient to prove bad faith).

The second limitation to removal here is referred to as the "voluntary/involuntary" rule. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71–72 (7th Cir. 1992). This court-created doctrine establishes that a case becomes removable upon the dismissal of a non-diverse defendant "only if the plaintiff *voluntarily* dismissed a non-diverse defendant." *Id*. at 71 (citing *Am. Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 316 (1915) (italics in original). As the Seventh Circuit recognized in *Poulos*, the rule serves two purposes. First, an involuntary dismissal may be reversed on appeal, leading to the possibility that a dismissed non-diverse defendant might be reinserted into a case by a state appellate court; the rule that removal can happen only after voluntary dismissal of the non-diverse defendant precludes this "yo-yo effect." *Id*. at 72. Second, the voluntary/involuntary distinction respects the general deference towards the plaintiff's choice of forum. *Id*. With respect to the Plaintiffs' claims at issue here, the rule has clear application:

Plaintiffs' claims against the forum defendants were involuntarily dismissed[7] by the Pennsylvania trial court and the dismissals have not been appealed.[8] Here too, however, fraudulent joinder creates an exception: if the defendant can show that plaintiff had no basis to include the non-diverse party in the first place, involuntary dismissal of that party does not bar removal. *Id*. at 72–73.

Thus, under either of these rules—the one-year time bar under § 1446(c)(1) or the "voluntary/involuntary" rule—Abbott's removal petition fails unless the defendant hospitals were fraudulently joined.[9] In opposing remand, Abbott raises two distinct grounds for finding that the

---

[7] In its opposition to remand, Abbott argues that the dismissal of Plaintiffs' claims against the hospital should be regarded as "voluntary" because, at a status conference, Plaintiffs' attorney advised that they would not be pursuing an appeal of the trial court's dismissal. (*See Abdullah* Resp. [14] at 5.) Abbott relies on the Second Circuit's functional approach to the voluntary/involuntary rule, which "treats a dismissal as voluntary if the plaintiff merely accedes to the dismissal by failing to appeal." *Poulos*, 959 F.2d at 72 n. 3 (discussing approach in *Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 40 n. 2 (2d Cir.1980)). The Seventh Circuit expressed "some sympathy" for this approach in *Poulos*, but the rule has no application here. In *Quinn*, the Second Circuit held that an involuntary dismissal did not bar removal because, by the time the district court denied remand, "the time for plaintiffs to take an appeal . . . had long passed, and no appeal by the plaintiffs had been taken." *Quinn*, 616 F.2d at 40 n. 2. There was, therefore, no concern of the case "yo-yo"-ing between federal and state court upon a successful appeal. That rationale has no purchase in circumstances such as these, where the plaintiffs' attorney had stated that he did not intend to appeal (perhaps because Plaintiffs' counsel understood that the case against Abbott would then continue in state court).

[8] That the dismissal has not been subject to appellate review is also relevant because federal district courts are split as to whether the voluntary/involuntary rule applies when an involuntary dismissal is affirmed on appeal—thereby alleviating the "yo-yo" concern. *See generally Abels v. State Farm Fire & Cas. Co.*, 694 F. Supp. 140, 144–45 (W.D. Pa. 1988) (discussing split among courts and finding that the voluntary/involuntary rule does not apply where dismissal has been affirmed on appeal).

[9] Plaintiffs suggest that any fraudulent joinder argument is untimely now because this removal was more than 30 days after fraudulent joinder was ascertainable from either the initial complaint (filed in March 2022) or the most recent amended complaint (filed in July 2024). (*See Abdullah* Reply [17] at 6–7.) Indeed, defendants ordinarily must remove within 30 days of the filing of a complaint if they are arguing that a non-diverse defendant is fraudulently joined. *See Lenzenhuber v. Misonix, Inc.*, No. 4:23 C 197 PLC, 2023 WL 3250723, at *6 (E.D. Mo. May 4, 2023); *Craig & Landreth, Inc. v. Protective Prop. & Cas. Co.*, No. 423 C 00162TWPKMB, 2024 WL 379821, at *4–5 (S.D. Ind. Feb. 1, 2024). But this case is procedurally different. Abbott does not argue fraudulent joinder to persuade the court to ignore the citizenship of a non-diverse party; the only remaining parties in the case are fully diverse. Rather, Abbott claims fraudulent joinder

Pennsylvania hospitals are fraudulently joined to this action. First, Abbott focuses its briefing on the argument that the trial court's dismissal of Plaintiffs' claims against the hospital defendants with prejudice provides a new basis for finding that the claims against the hospitals had no reasonable possibility of success on the merits. (*Abdullah* Resp. at 7–8.) Second, Abbott argues that Plaintiffs had "no real intent" to recover against the hospitals; as evidence, Abbott notes that Plaintiffs largely failed to pursue discovery against the hospital. (*Id*. at 13–14.) The absence of any genuine intent to proceed against the non-diverse defendant could provide a separate basis for finding fraudulent joinder regardless of the merits. *See Beal v. Armstrong Containers, Inc.*, No. 22 C 378-PP, 2023 WL 6441348, at *5 (E.D. Wis. Sept. 30, 2023).

I.  **No Reasonable Possibility of Success on the Merits**

Abbott's main argument in favor of removal is that Plaintiffs' claims against the hospital defendants have no reasonable possibility of success on the merits. (*See Abdullah* Resp. at 7.) But this court rejected this argument already and declines to revisit its determination. In *Abbott I*, the court explained in some detail why Plaintiffs' allegations, read generously as required by the fraudulent joinder standard, did not rule out a corporate negligence theory against the hospital defendants as a matter of law. *Abbott I* at *8–9. Abbott provides no additional basis in Pennsylvania law for determining that Plaintiffs' claims against the hospitals were doomed from the start, nor have they offered additional evidence that Plaintiffs' factual contentions considered in *Abbott I* were fraudulently pleaded or flatly contradicted in the record. Instead, the only intervening event of note between *Abbott I* and now is that the Pennsylvania trial court has dismissed the Plaintiffs' claims against the hospital.

---

as an *exception* to the one-year limit and voluntary/involuntary rule. Plaintiffs do not cite any persuasive authority suggesting that the 30-day limit applies in this posture. Indeed, placing a 30-day time limit on raising a fraudulent joinder argument in this circumstance would be difficult to square with the rule that fraudulent joinder is an exception to the one-year rule. *See McVey*, 2020 WL 5253853, at *4–5.

7

For several reasons, that event does not support a finding of fraudulent joinder. First, as other courts have recognized, the earlier ruling on this issue remains the law of the case, even if a claim is subsequently dismissed. See *Abels*, 694 F. Supp. at 143–44; *Huff v. AGCO Corp.*, No. 5:18 C 00469-GFVT, 2019 WL 1177970, at *3 (E.D. Ky. Mar. 13, 2019); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-1871, 2014 WL 2011597, at *2 (E.D. Pa. May 15, 2014). That claims against a non-diverse defendant are dismissed is not unusual. In *Abels*, *Huff*, and *In re Avandia*, the district courts considered arguments for removal where non-diverse defendants, first found to be not fraudulently joined, were later dismissed by the state courts. In each case, the courts recognized the prior decision as the law of the case and refused to revisit the finding simply because of a contrary state court dismissal. See *Abels*, 694 F. Supp at 143–44 ("[T]he Third Circuit found . . . that an objective basis in fact may have existed for plaintiffs' claims against the Doe defendants . . . . Consequently, the fraudulent joinder exception does not apply here."); *Huff*, 2019 WL 1177970, at *3 ("Here, Judge Caldwell determined at the outset of this case that the joinder of Southern States was not fraudulent . . . . [T]his Court cannot and will not disturb that ruling."); *In re Avandia*, 2014 WL 2011597, at *2 ("[T]he Court's earlier remand opinion reasonably found that Avandia plaintiffs may have colorable claims against McKesson under California law, and the Court will not revisit that issue now.") As the court in *Huff* explained, "simple application of law-of-the-case to rulings on fraudulent joinder saves judicial resources and assists in the smooth administration of justice." *Huff*, 2019 WL 1177970, at *2. That rationale exists here, where the court has fully considered Plaintiffs' allegations and available Pennsylvania caselaw, and any reexamination of fraudulent joinder at this stage would be duplicative of those efforts.[10]

---

[10] Abbott is nevertheless free to raise new bases for fraudulent joinder not resolved in *Abbott I* and *II*, such as whether Plaintiffs have demonstrated no real intent to recover against the hospital defendants, discussed below. See *In re Avandia*, 2014 WL 2011597, at *2–3 (entertaining Defendants' new argument that non-diverse defendant was fraudulently joined because Plaintiff showed no interest in prosecuting claims against them after prior remand).

Abbott argues that there is no law-of-the-case problem because it is not challenging this court's prior decision but instead raising a new claim of fraudulent joinder against Plaintiffs' *amended* complaints (that is, the complaints filed after this court ordered remand of their original complaints). (*See Abdullah* Resp. at 10.) The argument goes that even if the hospital defendants were not fraudulently joined to Plaintiff's initial complaints, Plaintiffs' joinder of the hospital defendants in the amended complaints—in light of the state court's order dismissing the claims with leave to amend—was baseless. But fraudulent joinder concerns whether a non-diverse defendant has been improperly joined "at the *inception* of the case," and tests whether "unnecessary nondiverse defendants are named in the *initial* complaint to defeat removal." *Abels*, 694 F. Supp. at 143 (citing *Cook v. Pep Boys-Mannie, Moe & Jack, Inc.*, 641 F. Supp. 43, 45 (E.D. Pa. 1985)) (emphasis added). Abbott cites to no case where joinder of a non-diverse defendant has been deemed non-fraudulent on the merits at the initial complaint, but later deemed to be fraudulent upon an amended complaint.[11] And even if this court were to treat Abbott's argument as its initial fraudulent joinder challenge, it would fail; Abbott has provided no new caselaw (other

---

[11] At a hearing on February 6, 2025, Abbott's counsel cited three cases— *Katonah v. USAir, Inc.*, 868 F. Supp. 1031 (N.D. Ill. 1994) ("*Katonah I*"); *Katonah v. USAir, Inc.*, 876 F. Supp. 984 (N.D. Ill. 1995) ("*Katonah II*"); and *In re StarLink Corn Prods. Liab. Litig.*, No. 02 C 4517, 2002 WL 31236304, at *1 (N.D. Ill. Oct. 3, 2002)—for the proposition that a court may find fraudulent joinder at a later stage, even after a claim is found non-fraudulent at the outset of the case. The cited cases do not alter the court's conclusion. Abbott appears to cite *Katonah I* and *II* because Judge Norgle initially found claims against a nondiverse defendant non-fraudulent in *Katonah I* but repeated the analysis (without changing his conclusion) in *Katonah II*. But this has limited application here. In *Katonah II*, Judge Norgle revisited the fraudulent joinder question because "[s]ince [the prior order], Captain Jackson [a key witness] signed a declaration attempting to explain away" the plaintiff's core evidence. *See Katonah II* at 987. No such new evidence weighing on the merits of Plaintiffs' claims has been provided here. *In re Starlink* is similarly unhelpful. In that case, defendants argued that the non-diverse *plaintiffs* were fraudulently joined in seeking removal. 2002 WL 31236304, at *1. Judge Moran rejected the fraudulent joinder argument, finding that the nondiverse plaintiffs pleaded a respectable claim against the defendants, but suggested that the defendants could "try again" if the state court severed the claims of the nondiverse plaintiff from the rest of the action. *Id*. This conclusion does not provide a basis for revisiting *the merits* of a plaintiff's claim against a nondiverse defendant following an earlier determination.

than the state trial court's ruling on these specific claims) on the merits of the hospital claims that the court did not consider previously. The court is not inclined to revisit this issue.

If the court were indeed to do so, the state court's ruling would not necessarily move the needle; "a federal court considering fraudulent joinder in a case where the state court has come to judgment is not bound by the state court's decision." *Poulos*, 959 F.2d at 73 n. 4. As the Seventh Circuit in *Poulos* explained, to bind the fraudulent joinder analysis to the state court's decision "would swallow up the voluntary/involuntary rule," as every claim involuntarily dismissed by a state court (thus subject to the voluntary/involuntary rule) could be deemed fraudulently joined (thereby excluded from the voluntary/involuntary rule). *Id*. Moreover, the standard used for sustaining a preliminary objection under Pennsylvania law differs from this court's standard for finding fraudulent joinder. Like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[p]reliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *Feingold v. Hendrzak*, 15 A.3d 937, 941, 2011 PA Super Ct. 34 (2011) (citation omitted). As "all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom," Pennsylvania courts sustain preliminary objections "only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Id*. The fraudulent joinder inquiry is even more generous: it calls for the court to determine "whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant," resolving questions of fact *and* law in the plaintiff's favor. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (quoting *Poulos*, 959 F.2d at 73)). While the Pennsylvania court's determination of the preliminary objection standard may be persuasive, it does not force this court's hand on a fraudulent joinder inquiry.

Finally, it is worth noting that the Pennsylvania court offered only brief reasoning in its ruling on Defendants' preliminary objections. In dismissing the hospital defendants, the Pennsylvania court stated only that the claims against the hospitals "are not recognized under

10

Pennsylvania law and do not set forth a prima facie case under any recognized claim against the hospital system." (*See Abdullah* Notice of Removal, Ex. A-80.) But the Pennsylvania court does not identify specific case law that *rules out* negligence claims against the hospitals as a matter of law, either. In *Abbott I*, this court, too, commented on "the paucity of Pennsylvania caselaw supporting Plaintiffs' specific corporate negligence claim" against the hospital defendants but noted that Abbott "ha[d] not cited to a single Pennsylvania case rejecting a corporate negligence claim on facts similar to Plaintiffs'." *Abbott I* at \*9. The state court dismissal here cites no additional authority on the question and does not otherwise challenge this court's prior decision.

The difference between the standard that governs a preliminary objection and the standard that governs fraudulent joinder is significant here. In sustaining the preliminary objections (and dismissing the hospital defendants), the Pennsylvania court took note of the absence of caselaw "recogniz[ing]" Plaintiffs' claims against the hospitals.[12] In this court's determination of whether the hospital defendants were fraudulently joined, however, the "heavy burden of establishing there is no reasonable possibility of success" rests on Abbott. *Id.* at \*8. If anything, the state court's subsequent amendment of its order comports with this court's prior appraisal of Plaintiff's claims. That the trial court amended the order to give Plaintiffs the opportunity to amend its pleadings against the hospital defendants mirrors this court's own conclusion that Plaintiffs' allegations of negligence, while potentially tenuous, were not baseless as a matter of law. *Abbott I* at \*8.

II. **No Real Intent**

That leaves the question of whether Plaintiffs have a genuine intent to pursue their claims against the non-diverse defendants. Some authority recognizes that even where the merits of a

---

[12] Indeed, in a recent transcript of proceedings in state court (submitted by Abbott), Judge Carpenter clarifies that she dismissed the claims because "what I really think [Plaintiffs are] trying to do is push a novel theory . . . . [L]et the Superior Court decide it." (*Abdullah* Sureply Ex. 1 [21-1] at 147:15–20.)

claim against a forum defendant have a possibility of success, a court may nonetheless find the forum defendant fraudulently joined where a plaintiff has demonstrated "no real intention in good faith to prosecute the action against the [in-state] defendant or seek a joint judgment." *Beal v. Armstrong Containers, Inc.*, No. 22 C 378-PP, 2023 WL 6441348, at *5 (E.D. Wis. Sept. 30, 2023) (quoting *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006)); *see also* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3723.1 n. 5 (Rev. 4th ed.) (collecting cases applying "no real intent" fraudulent joinder doctrine). Under this test, the court looks to whether "the plaintiff's collective litigation actions, viewed objectively, clearly demonstrate a lack of good faith intention to pursue a claim to judgment against a non-diverse defendant." *Faulk v. Husqvarna Consumer Outdoor Prods. N.A., Inc.*, 849 F. Supp. 2d 1327, 1331 (M.D. Ala. 2012).

While it does not by itself render Plaintiffs' efforts against the hospitals "fraudulent," the record here leaves little doubt that Plaintiffs have joined the hospital defendants for the sole purpose of defeating diversity jurisdiction. Plaintiffs stress the viability of their claims against the hospital defendants in this proceeding, but the court notes that in nearly 1,000 NEC cases brought against Abbott in its home state of Illinois (where it cannot seek removal), not a single Illinois hospital has been named as a defendant. (*Abdullah* Surreply [21] at 1.) And according to Abbott's uncontested account, the same attorneys who represent the Plaintiffs at issue here have also filed or appeared in 415 of the 1000 Illinois lawsuits. (*Id.* at 1–2.) Indeed, according to Abbott, an Illinois hospital has been named as a defendant in just one NEC case in Illinois: a lawsuit brought against Mead Johnson and not Abbott, where joinder of the in-state hospital was necessary to obstruct removal. (*Id.*); *see also Hobson v. Mead Johnson & Co. LLC, et al.*, No. 24LA0735 (Ill. Cir. Ct.). The Plaintiffs' attorneys involved in this motion represented the plaintiff in that case as well. *See Hobson v. Mead Johnson & Co. LLC, et al.*, No. 23C 01615-SPM (S.D. Ill) (federal docket). Though ordered by this court to explain why hospitals had only been named as defendants when doing so would defeat diversity (*see* Order [15]), Plaintiffs identified no substantive differences between Illinois and Pennsylvania law—instead gesturing vaguely to the

12

"complicated strategic decision" involved in suing a hospital. (*See Abdullah* Reply at 2–3.) Indeed, Plaintiffs' references to "what forum such a suit would be heard in" and "jurisdictional issues" confirms the court's conclusion that the hospitals here are added for no purpose other than to defeat diversity.

This might not matter if Plaintiffs had demonstrated, through their actions, an objective intent to pursue their corporate negligence claims against the hospitals in the two and-a-half years since this court remanded these cases. "Even if [forum-defendants] were added to prevent removal, that is [plaintiffs'] privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum . . . . It is enough that the claims be real, that the parties not be nominal." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). But a claim is not real without a real intent to pursue it, and the record before the court shows little to no evidence that Plaintiffs have seriously pursued discovery against the Pennsylvania hospitals in the intervening years. Across all six Plaintiffs currently seeking remand, Plaintiffs have conducted a single deposition in support of their claims against the hospital defendants: a ninety-minute deposition of Karen Puopolo, the designated administrative witness for Pennsylvania Hospital. (*See Abdullah* Puopolo Dep. Tr. [10-4].) Tellingly, Plaintiffs appear to have conducted this deposition only at the urging of the state trial court, which had expressed displeasure that as of July 24, 2023, more than a year after the original complaint filed in state court, Plaintiffs had not yet noticed a deposition of the hospital defendant's representative. (*See Abdullah* Richeson Decl. ¶ 6.) Even more troubling, Plaintiffs' requests for documents and interrogatories issued to the hospital defendants went unanswered for nineteen months, but Plaintiffs have filed no efforts to compel responses. (*See* Hr'g Tr. at 62:12–63:2); *see also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 421–22 (E.D. Pa. 2002) (finding fraudulent joinder where "[non-diverse defendants] have not been held to pretrial discovery deadlines or continuing document production obligations"). The October 21, 2024

13

statement from Plaintiffs' counsel that they did not (at that time) expect to appeal dismissal of the hospital defendants is also telling. (Richeson Decl. ¶ 10.)

Plaintiffs have had many opportunities to provide evidence of efforts to pursue claims against the hospital defendants or explain why the efforts they have made are more substantial than they seem; they have not done so. Plaintiffs' "collective litigation actions" against the hospital defendants provide no basis for a finding of any good faith effort or genuine intent to pursue a claim against the hospital defendants to judgment. *Faulk*, 849 F. Supp. 2d at 1331. Notwithstanding the possibility of success of these claims on the merits, Plaintiffs have shown no real intent to pursue them to judgment; the court thus concludes the hospital defendants are fraudulently joined to this action. Disregarding the citizenship of the Pennsylvania hospitals, the forum-defendant rule no longer bars diversity jurisdiction over this case.

### III. Certification under 28 U.S.C. § 1292(b)

Although comfortable with its decision on this issue, the court recognizes that case law recognizing "no real intent" fraudulent joinder is thin. The Seventh Circuit has yet to discuss, much less adopt, the "no real intent" basis for fraudulent joinder, and the district courts decisions finding "no real intent" have clear factual dissimilarities (see below). Given the significance of this ruling for other cases in this MDL, it is appropriate for Plaintiffs to have an immediate opportunity for appellate review of this order.

The statute, 28 U.S.C. § 1292(b), provides such an opportunity. Though orders denying remand are not immediately appealable, *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996), § 1292(b) provides that a district court may certify a question of law for interlocutory appeal where

> in making in a civil action an order not otherwise appealable . . . [the court is] of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . .

28 U.S.C. § 1292(b). The language of the statute provides four requirements for a question of law to be certifiable: (1) "there must be a question of *law*," (2) "it must be *controlling*," (3) "it must

be *contestable*," and (4) "its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000).

Here, there are two questions of law crucial to the court's conclusion in section II of this order that may be appropriate for certification: (1) whether a plaintiff's failure, through their litigation actions, to demonstrate a real or good faith intent to pursue a claim against a non-diverse defendant, is a basis for finding that the non-diverse defendant was fraudulently joined; and if so, (2) whether a plaintiff's failure over many months to pursue unanswered interrogatories; taking of a singular, perfunctory deposition; and a verbal representation that they will not seek an appeal of a dismissal of their action against the non-diverse defendant, meets the standard for finding "no real intent" fraudulent joinder. These questions meet all four of the requirements set out in *Ahrenholz*.

First, they are pure questions of law. A question of law is one that regards "the meaning of a statutory or constitutional provision, regulation, or common law doctrine [such that] the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 676. Both questions described above concern the meaning and scope of the Seventh Circuit's fraudulent joinder doctrine, a federal common law doctrine first discussed by the Seventh Circuit in *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992). While the questions refer to facts in these cases—such as the litigation actions taken by Plaintiffs—these facts are not in dispute, and the Seventh Circuit need not study the record in clarifying the scope and extent of the fraudulent joinder doctrine.

Second, the questions are controlling here. Questions of law are controlling when "[their] resolution is quite likely to affect the further course of litigation, even if not certain to do so." *Sokaogon v. Gaming Enter. Co. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Apart from the "no real intent" issue, Plaintiffs would prevail on their motion for remand. If this court is incorrect in concluding that the absence of any real intent to pursue claims against

the hospitals defeats this motion, the court will order remand and terminate the litigation of these claims in federal court.

Third, the questions are contestable, or, in the words of the statute, "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). The case law applying "no real intent" fraudulent joinder is undeveloped; and where courts *have* applied the doctrine, there has generally been stark proof that the plaintiff has no intention of recovery against the non-diverse defendant (i.e. a more flagrant absence of litigation actions). *See Faulk*, 849 F. Supp. 2d at 1331 (finding "no real intent" fraudulent joinder where there was a "non-attempt of service [of non-diverse defendant] since practically the inception of the case"); *In re Diet Drugs*, 220 F. Supp. at 421–22 (finding "no real intent" to prosecute claim against manufacturers of phentermine drug in mass tort litigation where plaintiff's counsel conducted "no depositions of any witnesses affiliated with a phentermine defendant" and "the phentermine defendants' motion to disallow evidence that phentermine caused [injury] was unopposed"); *In re Avandia*, 2014 WL 2011597, at *2–3 (finding non-diverse defendant fraudulently joined where plaintiffs "had directed no discovery requests" to him despite litigating the case for five years). Here, the court finds that Plaintiffs' litigation actions against the hospital defendants in state court do not evidence a real intent to pursue a judgment, but it is undeniable that Plaintiffs have done more than the plaintiffs in cases like *Faulk*, *In re Diet Drugs*, and *In re Avandia*. There is thus a basis for disagreement as to whether Plaintiffs' litigation actions, such as they are, meet the standard for fraudulent joinder.

Finally, resolving these questions of law at this stage of the litigation will "materially advance" and "speed up" this litigation. *Ahrenholz*, 219 F.3d at 675. The Plaintiffs currently seeking remand are six among twenty-nine cases against Abbott and Mead Johnson filed in Pennsylvania, litigated by the same attorneys, that were previously remanded and may very well be removed again to federal court; and among hundreds of cases nationwide filed in state courts.

16

An immediate appeal clarifying the scope of fraudulent joinder will speed up the court's ability to determine whether jurisdiction is appropriate should other cases in this MDL present identical issues of "real intent."

## CONCLUSION

Plaintiffs' motions to remand are denied. With respect to Plaintiff Taylor, who is not diverse from Defendant Mead Johnson, the court directs that the parties submit further briefing within 13 days as to whether Mead Johnson is fraudulently joined to her action.

Pursuant to 28 U.S.C. § 1292(b), the court certifies two questions for interlocutory appeal:

(1) whether a plaintiff's failure, through their litigation actions, to demonstrate a real or good faith intent to pursue a claim against a non-diverse defendant, is a basis for finding that the non-diverse defendant was fraudulently joined; and if so

(2) whether a plaintiff's failure to pursue unanswered interrogatories, taking of a singular, perfunctory deposition, and a verbal representation that they will not seek an appeal of a dismissal of their action against the non-diverse defendant, meets the standard for finding "no real intent" fraudulent joinder.

ENTER:

Dated: July 3, 2025

_____
REBECCA R. PALLMEYER
United States District Judge

17